JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Lakeitha Small, appeals from the judgment of the Common Pleas Court, rendered after a jury verdict, convicting her of kidnapping, felonious assault, and grand theft. We reverse and remand.
 {¶ 2} In October 2003, the Cuyahoga County Grand Jury indicted Small for kidnapping, in violation of R.C. 2905.11; two counts of felonious assault, in violation of R.C. 2903.11; two counts of attempted aggravated murder, in violation of R.C. 2903.01; theft of an automobile, in violation of R.C. 2913.02; aggravated robbery, in violation of R.C.2911.01; and arson, in violation of R.C. 2909.03.
 {¶ 3} All of the charges contained one- and three-year firearm specifications.
 {¶ 4} At trial, Donte Driscal testified that around midnight on May 29, 2003, he was driving home in his 1995 Chevy Tahoe truck. The truck was equipped with customized chrome rims, an expensive stereo system, and three television sets, which were on. As he was waiting at a red light, Small pulled up next to him in a green Toyota 4-Runner. Driscal could see another female sitting in the front passenger seat. The rear windows of the 4-Runner were tinted and Driscal did not observe any other passengers in the vehicle.
 {¶ 5} According to Driscal, Small initiated a conversation with him. She asked him what he was doing that night and told him that she wanted to exchange telephone numbers with him. When the light turned green, Small told Driscal to follow her so they could pull over and exchange numbers.
 {¶ 6} Driscal testified that he followed Small as she drove a few more blocks and then pulled over on a side street. Driscal pulled his truck behind Small's SUV and, when she got out of her vehicle and began walking back to his truck, he got out of his truck. According to Driscal, they stood outside and talked for a few minutes and then Small told Driscal that she had to get something out of her car. When she reached the driver's side door, one of the back doors of the SUV opened and two men got out of the SUV. Small got back into the vehicle.
 {¶ 7} One of the males pointed a gun at Driscal and told him to "empty his pockets." Driscal testified that he told the male that he did not have any money on him, so the male told Driscal to give him his keys. According to Driscal, after he gave the man his keys, the male raised the gun as if he intended to shoot him. Driscal grabbed for the gun and he and the male began struggling over the gun. The gun went off several times, hitting Driscal in the stomach, leg and buttocks.
 {¶ 8} Driscal subsequently identified Small from a photo array as the woman who was driving the 4-Runner. He also identified Gary Crump from a photo array as the man who had shot him.
 {¶ 9} Gary Crump, who reached a plea agreement with the State in exchange for his testimony against Small, testified that he was dating Small in May 2003. According to Crump, on the evening of May 29, 2003, he, Small, Anthony Lett, and two unidentified females were riding around in Small's Toyota 4-Runner looking for someone to rob.
 {¶ 10} Crump testified that around midnight, they saw a 95 Chevy Tahoe with "nice rims." Small pulled up next to the truck at a light, got the driver's attention, and began talking to him. According to Crump, as Driscal followed Small several blocks to the side street, the five occupants of the 4-Runner decided that Small would get out of the SUV and start talking to Driscal, in an attempt to lure him from his vehicle.
 {¶ 11} Crump testified that Small got out of her car and spoke with Driscal, who had also gotten out of his car. When Small came back to the 4-Runner, Crump whispered to her to get her jacket and go back to talk to Driscal, in an attempt to stall him. Crump testified that as Small and Driscal stood outside talking, he jumped out of the 4-Runner, pulled a gun on Driscal on told him to "give it up." Crump tried to hit Driscal with the gun, but Driscal grabbed for it, and the two men began struggling. The gun went off and Driscal went down. Small then drove away in the 4-Runner and Crump followed, driving Driscal's truck.
 {¶ 12} Crump drove the truck to his friend Karen Hunter's house, where he parked the truck in the backyard and began stripping it. Crump and Lett then took the truck to an empty field near to Hunter's home and burned it. The next day, when Small met Crump and Lett at Hunter's house, they loaded the items stripped from Driscal's truck into Small's SUV and drove to a known drug area, where they sold them.
 {¶ 13} Karen Hunter testified that she was furious when she returned home the morning of May 30, 2003, and found Crump and two women sleeping in her living room, and the items stripped from Driscal's truck in her kitchen. She woke Crump and told him to remove the items from her house. When she returned to her home a short time later, she saw Crump loading the items into a green, four-door truck. Hunter testified that she had met Small a few weeks earlier at a party, and that, although she was not sure, Small may have been one of the women in her living room on May 30, 2003.
 {¶ 14} The jury found Small guilty of kidnapping, felonious assault, and grand theft, but not guilty of the other counts, and not guilty of any of the firearm specifications. The trial court sentenced her to four years incarceration on the kidnapping and felonious assault convictions, and one year incarceration on the grand theft conviction, to be served concurrently.
 {¶ 15} In her single assignment of error, Small contends that her convictions are not supported by the manifest weight of the evidence because Crump's testimony was "self-serving" and "inherently unreliable."
 {¶ 16} Small correctly notes that accomplices such as Crump may indulge in self-serving testimony. Thus, although accomplice testimony is admissible, it must be accompanied by an appropriate cautionary jury instruction regarding such testimony. As this court noted in State v.Muntaser, Cuyahoga App. No. 81915, 2003-Ohio-5809, at ¶ 41, "when an accomplice testifies on behalf of the State in exchange for a plea agreement, there is a possibility the accomplice's testimony may be self-serving and biased. Therefore, R.C. 2923.03(D) requires that the court give the jury a special instruction on the credibility of accomplices." The instruction alerts the jurors that accomplices are witnesses with special motives that the average juror may never before have encountered. State v. Pope, Cuyahoga App. No. 81321, 2003-Ohio-3647, at ¶ 36.
 {¶ 17} R.C. 2923.03(D) provides: {¶ 18} "If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense * * *, the court when it charges, the jury, shall state substantially the following:
 {¶ 19} "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or selfinterest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 {¶ 20} "It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
 {¶ 21} The cautionary instruction regarding accomplice testimony is proper where there is some evidence of complicity, i.e., evidence that one aided or abetted another in committing the offense while acting with the kind of culpability required for commission of the offense. State v.Turpin, Cuyahoga App. No. 82658, 2003-Ohio-4955, at ¶ 16, citing Statev. Moritz (1980), 63 Ohio St.2d 150; State v. Coleman (1988),37 Ohio St.3d 286; State v. Johnson (2001), 93 Ohio St.3d 240.
 {¶ 22} Here, the State's theory was that Small, Crump and Anthony Lett acted together to rob Driscal. The State argued that, as part of their plan, Small lured Driscal out of his car, so that Crump and Lett could rob him and steal his truck. Thus, Crump's testimony was clearly accomplice testimony. Prior to any instruction of the jury, defense counsel requested the cautionary instruction regarding accomplice testimony, but the trial court denied counsel's request.
 {¶ 23} This court has previously found the failure to give the accomplice instruction to be harmless error where counsel failed to request the instruction in the trial court and significant other evidence introduced at trial supported the defendant's conviction. See, e.g.,Cleveland Heights v. Riley (May 20, 1999), Cuyahoga App. No. 74101; Statev. Cardwell (Sept. 2, 1999), Cuyahoga App. Nos. 74496, 74497, 74498. In this case, however, counsel clearly and timely requested the instruction. Accordingly, because the instruction is required by statute, the trial court erred in not giving the instruction. See Pope,
supra.
 {¶ 24} Appellant's assignment of error is therefore sustained. Reversed and remanded.
This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Calabrese, Jr., J., Concur.