JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Shigali Jones ("Jones") appeals his conviction and sentence. Finding some merit to the appeal, we reverse.
 {¶ 2} In 2005, Jones was charged with attempted murder, two counts of aggravated robbery, and two counts of felonious assault, all with firearm specifications.
 {¶ 3} The following evidence was adduced at Jones' jury trial.
 {¶ 4} On September 19, 2005, Jesus Malave Morales ("Morales") met with codefendant Earl Adkins ("Adkins"). Both men were admitted cocaine abusers who sold drugs for Jones. Morales and Adkins were expected to sell $250 worth of crack cocaine for Jones on one occasion, but they consumed the drugs themselves.
 {¶ 5} Adkins told Jones that Morales had stolen the drugs. Adkins and Jones went to pick up Morales and told him that they were going to rob a factory on Bessemer Avenue in Cleveland. The three men drove to the factory, and Jones waited in the car while Adkins and Morales walked toward the factory. Adkins pulled out a gun and shot Morales several times.
 {¶ 6} Adkins and Jones fled, leaving Morales lying on the ground where factory workers discovered him the next day. Morales suffered six gunshot wounds. Jones visited Morales in the hospital and told him that someone at the factory had shot him. When Morales told Jones that Adkins had shot him, Jones acted surprised and offered to testify against Adkins. *Page 4 
 {¶ 7} Adkins admitted at trial that he lied to Jones about Morales' stealing the drugs, and that Adkins and Morales had actually smoked the cocaine.[1] Adkins claimed he lied because he was afraid of Jones. He testified that Jones went to get his gun after he told him that Morales had stolen the drugs. Jones then told him that he either had to "take care of Morales, or Jones would kill Adkins. Jones and Adkins then went to find Morales and told him that they were going to commit a robbery at the factory.
 {¶ 8} Adkins testified that after he shot Morales, he returned to the car, and Jones asked him if Morales was dead. Adkins then placed the gun under the passenger seat of Jones' car. When they learned that Morales was still alive, Jones ordered Adkins to go to the hospital to kill Morales and also told him what he should tell the police when questioned.
 {¶ 9} Morales' mother testified that Jones threatened her family when he came to the hospital to visit her son.
 {¶ 10} The jury convicted Jones of attempted murder and two counts of felonious assault with the accompanying gun specifications. The trial court sentenced Jones to an aggregate sentence of thirteen years in prison.
 {¶ 11} Jones now appeals his conviction and sentence, raising eighteen assignments of error for our review. *Page 5 
 {¶ 12} First, we note that Jones has listed an additional assignment of error under his "statement of assignments of error presented for review" and "issues presented for review" that is neither mentioned nor argued in the body of his brief. The assignment of error states that the "defendant was denied due process of law when the court did not fully instruc[t] the jury as to all elements of conspiracy." Again, this assigned error is not contained in the body of the brief. Therefore, pursuant to App.R. 12 and 16, and because the disposition of the second and sixth assignments of error renders the remaining errors moot, we will not address this assignment of error.
 {¶ 13} Next, we will discuss the second and sixth assignments of error which we find dispositive.
 Jury Question {¶ 14} In his second assignment of error, Jones argues that the trial court erred when it answered a jury question outside his presence and that of his counsel. We agree that the trial court erred to Jones' prejudice, and reverse and remand the case for a new trial for the following reasons.
 {¶ 15} A defendant in a criminal case has a right to be present when, pursuant to a request from the jury during its deliberations, the judge communicates with the jury regarding jury instructions. State v.Abrams (1974), 39 Ohio St.2d 53, 313 N.E.2d 823. Consequently, any communication between the court and the jury outside the presence of a defendant is error and may be grounds for a new trial. *Page 6 Bostic v. Connor (1988), 37 Ohio St.3d 144, 149, 524 N.E.2d 881;Kirk v. State (1846), 14-Ohio-511; Jones v. State (1875),26 Ohio St. 208.
 {¶ 16} The Ohio Supreme Court has made clear, however, that erroneous communications between the trial court and the jury constitute good cause for a new trial only if the communications prejudiced the defendant's right to a fair trial. Abrams, supra at 56; State v.Jenkins (1984), 15 Ohio St.3d 164, 233-37, 473 N.E.2d 264. When the communications are substantive, such as when the trial court clarifies an instruction or provides an additional instruction to the jury, courts have found that the error is prejudicial. See State v. Alvarado (Sept. 13, 2001), Cuyahoga App. No. 78629. But when the trial court merely restates previously given instructions, the communication has been found to be harmless. See Abrams, supra.
 {¶ 17} Thus, a forbidden communication will not always constitute reversible error. The standard is whether there is "any reasonable possibility of prejudice." United States v. Reynolds (6th Cir. 1973),489 F.2d 4, quoting, Wade v. United States (1971), 142 U.S.App.D.C. 356,441 F.2d 1046, 1050; see also State v. Wilhelm, Knox App. Nos. 03-CA-25 and 03-CA-26, 2004-Ohio-5522.
 {¶ 18} The record in the instant case contains the following question printed on a single sheet of paper signed by the jury foreperson:
 "If a person aided, helped, etc. in the commission of a crime, regardless of the crime, for instance a "lick" v. attempted murder, but the intended crime (lick) *Page 7 
becomes, through the actions of another unknown to a defendant, an attempted murder, does the defendant become a part of this as a conspirator?"[2]
On the back of the paper, the judge apparently wrote: "use your collective memories and keep deliberating." The judge also signed and dated the paper.
 {¶ 19} A review of the entire record reveals no mention of the jury question. Although the State claims that counsel for both sides met with the judge and agreed to the above answer, that contention is not part of the record, nor is the judge's signature accompanied by counsels' signature. Moreover, the State has not submitted an affidavit to this court regarding the circumstances of the jury question.[3]
 {¶ 20} Therefore, we have no way of determining whether the defendant or his counsel was present at that stage of the trial. We are bound by the record, however, and cannot presume what transpired, if anything, off the record.
 {¶ 21} The transcript in the instant case is silent as to the existence of a jury question. There is no indication of how the jury received the trial court's response, nor does the transcript indicate that, after the fact, the trial court memorialized a prior *Page 7 
off-the-record discussion it may have had with counsel. Indeed, the record does not suggest the trial court gave either the State or defense counsel the opportunity to express their thoughts about the answer to the question posed, much less the opportunity to object to the trial court's proposed response.
 {¶ 22} The State contends that the court committed no error, because both the prosecutor and defense counsel were present when the court wrote its answer to the jury's question. Again, that claim is not supported by the record. Even if the trial court did err, the State argues that any error is harmless, because the trial court did not give any substantive information to the jury in response to its question.
 {¶ 23} Although the trial court's answer did not provide substantive information to the jury, an additional concern is presented by the court's response. The jury asked a basic legal question, and the trial court replied with a factual answer completely unresponsive to the jury's question. If a jury's inquiry suggests confusion regarding a legal issue of some significance, the trial court should not rely on general statements from the prior charge, but should clarify the point of concern. See United States v. Nunez (C.A.6, 1989), 889 F.2d 1564,1568; State v. Sales, Franklin App. No. 02AP-175, 2002-Ohio-6563.
 {¶ 24} The question posed by the jury in the instant case sought guidance from the trial court on a question of law. It was misleading, as well as erroneous, to suggest to the jury that its question was a question of fact. See Sales, supra. The trial court did not even supply the jury with a general statement as to the jury charge *Page 8 
that may have assisted the jury in its apparent confusion regarding the law of complicity. Instead, the trial court responded to the jury's question with a boilerplate response to a factual question (e.g., a question about witness testimony). The State argues that the court "merely instructed the jury" to reread the jury instructions. Clearly, the court told the jury to rely on its collective memories, not any prior instructions.
 {¶ 25} The State also urges affirmance because no objection was made at the trial court. We do not know, however, if defense counsel knew about the existence of the question in order to object. Thus, we find that the record's failure to reflect a defense objection is linked to the trial court's decision to address the jury's question off the record and possibly without counsel's presence. See Sales, supra. Thus, even in the absence of an objection, the trial court's response cannot be deemed harmless error.
 {¶ 26} Finally, although not relied on in the State's brief, it is important to distinguish the Ohio Supreme Court decision in State v.Chinn, 85 Ohio St.3d 548, 1999-Ohio-288, 709 N.E.2d 1166. InChinn, supra at 568, the defendant argued that he was entitled to a new trial because the record was silent as to whether he and defense counsel were present when the trial court communicated with the jury. In relying on State v. Clark (1988), 38 Ohio St.3d 252, 258, 527 N.E.2d 844, the Court found that "the record must affirmatively indicate the absence of a defendant or his counsel during a particular stage of the trial." Id. We find Chinn distinguishable *Page 9 
from the instant case, although the transcript does not affirmatively indicate the absence of Jones or his counsel. In the instant case, the transcript is completely devoid of any mention of the jury question or how the court fashioned its answer. This, coupled with the trial court's inadequate response to the jury, leads us to conclude that there was at least a reasonable possibility of prejudice.
 {¶ 27} Therefore, the second assignment of error is sustained.
 Accomplice Instruction {¶ 28} In the sixth assignment of error, Jones argues that he was denied due process of law when the court failed to give an instruction concerning the testimony of codefendant Adkins. After reviewing this assignment for plain error, we agree.
 {¶ 29} The crux of the State's case against Jones is that he conspired with Adkins to kill Morales. Adkins agreed to a plea bargain in which he would testify against Jones. We have said that "when an accomplice testifies on behalf of the State in exchange for a plea agreement, there is a possibility the accomplice's testimony may be self-serving and biased." State v. Lett, 160 Ohio App. 3d 46, 50, 2005-Ohio-1308,825 N.E.2d 1158; see also State v. Small, Cuyahoga App. No. 84768,2005-Ohio-1316; State v. Muntaser, Cuyahoga App. No. 81915,2003-Ohio-5809.
 {¶ 30} Trial courts are required to give a special jury instruction in situations where there is some evidence of complicity and an accomplice testifies against the defendant. State v. Moritz (1980),63 Ohio St.2d 150, 407 N.E.2d 1268; see also *Page 10 State v. Turpin, Cuyahoga App. No. 82658, 2003-Ohio-4955; State v.Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796.[2] Adkins' testimony in this case was clearly accomplice testimony.
 {¶ 31} In compliance with R.C. 2923.03(D), the trial court should have charged the jury as follows regarding the credibility of an accomplice:
 "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
 {¶ 32} The State argues that Jones has waived this issue because defense counsel failed to request the above instruction. We find that the failure to give this mandated cautionary instruction, however, amounts to plain error in the instant case because the accomplice instruction is required to be given by law. See State v. Pope, Cuyahoga App. No. 81321, 2003-Ohio-3647, 4|39; see also State v. Burkhammer (Jan. 11, 1991), Lake App. No. 89-L-14-096, citing State v. McKinney (Mar. 6, 1990), Franklin App. Nos. 89AP-466, 89AP-467, 89AP-468, and 89AP-469;State v. Ferguson (1986), 30 Ohio App.3d 171, 174, 507 N.E.2d 388. *Page 11 
 {¶ 33} We note that this court has previously found the failure to give the accomplice instruction to be harmless error where defense counsel failed to request the instruction in the trial court and significant other evidence introduced at trial supported the defendant's conviction. See, Cleveland Heights v. Riley (May 20, 1999), Cuyahoga App. No. 74101; State v. Cardwell (Sept. 2, 1999), Cuyahoga App. Nos. 74496, 74497, 74498. In the instant case, however, the State relied in large part on the testimony of Adkins, the actual shooter. Therefore, the sixth assignment of error is sustained.
 {¶ 34} Because the second and sixth assignments of error are dispositive, we find the remaining assignments of error moot.[3]
 {¶ 35} Accordingly, judgment is reversed and the case is remanded for a new trial. *Page 12 
It is ordered that appellant recover of appellee the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J. and KENNETH A. ROCCO, J. Concur.
[1] On an earlier date, Adkins pled guilty to attempted murder and aggravated robbery with gun specifications.
[2] Morales testified that the term "lick" is street language for a robbery.
[3] See, cf., Abrams, supra, where the Ohio Supreme Court considered the affidavit of the trial judge that had been filed in the appellate court regarding an alleged ex parte communication.
[2] As we noted in Lett, supra, a defendant may be charged with complicity or aiding and abetting, although not formally indicted as such because Ohio law does not require complicity or conspiracy to be charged in the indictment in every instance. Id. at ¶ 16, citingState v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215. A charge of complicity may be stated in terms of the principal offense. Id. citing R.C. 2923.03(F); see also State v. Dotson (1987),35 Ohio App.3d 135, 520 N.E.2d 240, paragraph two of the syllabus.
[3] In the first assignment of error, Jones argues that he was denied his right of confrontation when a prosecution witness was allowed to invoke his Fifth Amendment privilege. In the third assignment of error, Jones argues that he was denied a fair trial because the trial court allowed testimony regarding prior bad acts. In the fourth assignment of error, Jones argues that he was denied a fair trial because the prosecutor failed to object during the cross-examination of the State's witness. In the fifth assignment of error, he argues that he was denied due process because the interpreter was not properly sworn. Jones challenges the propriety of the jury instructions in the seventh through fourteenth assignments of error. In the fifteenth assignment of error, he argues that the court should have granted a motion for acquittal. In the sixteenth assignment of error, he argues that he was denied effective assistance of counsel, and he challenges his sentence in the seventeenth and eighteenth assignments of error. *Page 1